United States District Court
Southern District of Texas
**ENTERED**
April 01, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILLIAM FLETCHER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:23-CV-00183 |
| § | |
| DILLON DECHOW, § | |
| § | |
| Defendant. § | |

# MEMORANDUM ORDER AND OPINION

This case involves allegations of excessive force against Sergeant Dillon Dechow, a Texas Department of Criminal Justice ("TDCJ") correctional officer. William Fletcher, a TDCJ inmate at the Walls Unit in Huntsville, Texas, claims that after requesting assistance with his belongings due to a hand injury, Dechow became aggressive, yelled at him, and later physically assaulted him punching him multiple times. (Dkt. No. 1 at 4–5, 8); (Dkt. No 10 at 1–2). Other TDCJ officers allegedly had to intervene to stop the attack. (Dkt. No. 1 at 4–5). Fletcher filed a civil-rights complaint against Dechow and the other officers. (*Id.*); (Dkt. No. 10 at 2–3).

On February 21, 2024, the Court granted Officers Hagans, Karr, and Weatherspoon's Motion to Dismiss, (Dkt. No. 16), dismissing all claims except Fletcher's excessive-force claim against Dechow, (*see* Dkt. No. 19). Dechow now moves for summary judgment. (Dkt. No. 27). Fletcher has not responded.

For the following reasons, Dechow's Motion for Summary Judgment, (*id.*), is **GRANTED**, and Fletcher's Complaint, (Dkt. No. 1), is **DISMISSED with prejudice**.

## I.     BACKGROUND[1]

Fletcher is an inmate currently incarcerated in TDCJ.  Proceeding *pro se* and *in forma pauperis*, Fletcher filed his Original Complaint alleging excessive-force and failure-to-protect claims against several correctional officers.  (Dkt. No. 1).

On December 28, 2021, Fletcher claims that he was going to his unit's tunnel, carrying his belongings with the help of another inmate due to a hand injury.  (*Id.* at 4–5, 8); (Dkt. No. 10 at 2).  As Fletcher and the other inmate walked, Dechow stopped them and instructed them to return to the unit's gym.  (Dkt. No. 1 at 4).  Then he directed Fletcher to the end of the tunnel.  (*Id.*).  Fletcher asked if someone could be called to help him transport his belongings to the back gate.  (*Id.*).  Dechow responded that Fletcher should carry what he could and that the rest of his property would be shipped separately.  (*Id.*).  He also told Fletcher that the bus was waiting at the back gate.  (*Id.*).

Fletcher requested that Dechow call Lieutenant Hagans.  (*Id.* at 4–5).  In response, Dechow began yelling and cursing at Fletcher.  (*Id.* at 5).  Fletcher insisted that he would not leave his belongings behind unless they were properly inventoried.  (*Id.*). Eventually, Dechow called Hagans, who arrived with Sergeant Karr, Officer Weatherspoon, and a John Doe.  (*Id.*).

When Hagans arrived, Dechow stated that Fletcher refused to go to the back gate.  (*Id.*).  Dechow continued to yell and act aggressively.  (*Id.*).  To defuse the situation,

---

[1]   Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant.  *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020).  The Court has not weighed evidence or made credibility findings.  *Id.*

Hagans told Dechow to step back; but Dechow remained verbally aggressive, prompting Hagans to step between Dechow and Fletcher to create space. (*Id.*). While Hagans was speaking with Fletcher, Dechow moved between the John Doe and Weatherspoon and suddenly began punching Fletcher multiple times in the face and head with a closed fist until the other officers pulled Dechow away. (*Id.*).

Dechow recalls these events differently. According to Dechow, he was escorting inmates to the TDCJ transport bus when *Fletcher* became verbally aggressive and began yelling. (Dkt. No. 27 at 3). In response, Dechow attempted to de-escalate the situation and ordered Fletcher to turn away and place his hands on the wall. (*Id.*). When Fletcher didn't comply, Dechow initiated an Incident Command System ("ICS") call, requesting additional staff and a video camera. (*Id.*).

Lieutenant Hagans and Sergeant Alexander[2] responded to the ICS call. (*Id.*). Upon their arrival, Fletcher removed his shirt and lunged at Dechow, prompting Dechow to use both hands to push Fletcher in the chest to prevent him from advancing. (*Id.*). Hagans then ordered Fletcher to step back, and Alexander ordered him to submit to wrist restraints. (*Id.* at 3–4). Fletcher complied. (*Id.* at 4).

Soon after, Sergeant Karr arrived with a video camera and observed Fletcher, who was already in hand restraints. (*Id.*). Dechow left the area. (*Id.*). Officer Weatherspoon

---

[2] Sergeant Alexander appears to be the "John Doe" referenced in Fletcher's Complaint. (*See* Dkt. No. 27 at 1–2, 5) (listing five TDCJ officers: Dillon Dechow, Christi Hagans, Lily Karr, Patrick Weatherspoon, and a "John Doe," who is a TDJC sergeant); (Dkt. No. 27 at 3–4) (describing the events as involving five TDCJ officers: Sergeant Dechow, Lieutenant Hagans, Sergeant Karr, Officer Weatherspoon, and Sergeant Alexander).

3

also arrived in response to the ICS call and helped Alexander escort Fletcher to a medical evaluation for use of force. (*Id.*). A TDCJ nurse conducted the evaluation and documented that Fletcher had no visible injuries and made no complaints of injury. (*Id.*). Fletcher was placed in a holding cell and offered a use-of-force form by Hagans, which he declined to complete. (*Id.*).

All Parties agree that about five weeks later, on February 2, 2022, Fletcher filed a TDCJ grievance about the incident. (Dkt. No. 27-1 at 2–3). Warden Castleberry replied to Fletcher's grievance on March 17, 2022, stating that Fletcher's allegations were "referred to the Office of the Inspector General (OIG)" and that the prison would not be taking any further action. (*Id.* at 3).

Fletcher then filed a Step 2 grievance on April 27, 2022, stating that he was dissatisfied with the Step 1 response because it didn't say whether an investigation had been completed regarding his Step 1 allegations of Eighth Amendment violations. (*Id.* at 4). On May 25, 2022, a TDCJ representative responded to Fletcher's Step 2 grievance, stating that it had been forwarded to the OIG and assigned a case number. (*Id.* at 5).

On February 22, 2022, the OIG began to investigate use-of-force allegations against Dechow after receiving a complaint from Fletcher's mother. (Dkt. No. 27-4 at 7). The next day, Criminal Investigator Perkins began the investigation by reviewing the TDCJ's Use of Force Packet, which documented the incident and included a video, two photographs taken on the day of the incident, staff statements, and the Use of Force Injury Report—none of which showed any injuries to Fletcher. (*Id.* at 7–8, 18). Perkins also conducted interviews with Dechow, as well as with the nurse who performed the medical

4

evaluation and other witnesses, finding their accounts consistent with their written statements. (*Id.* at 9–17). Perkins observed that Fletcher showed no visible injuries in the video or photographs and made no allegations of being struck. (*Id.* at 18). Due to the lack of surveillance footage and physical evidence, Perkins concluded that Fletcher's allegations could not be corroborated and closed the investigation. (*Id.* at 17–18).

Fletcher filed this civil-rights action, alleging that Dechow violated his Eighth Amendment rights by punching him in the face and head. (Dkt. No. 1 at 1, 5); (Dkt. No. 10 at 1–2). Dechow moved for summary judgment. (Dkt. No. 27). Fletcher has not responded.

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the

motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

When, as here, the nonmovant fails to respond to the motion for summary judgment, the movant is not entitled to summary judgment solely because the nonmovant does not respond. *Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988). Still, "[t]he failure to respond to a summary judgment motion leaves the movant's facts undisputed." *Flowers v. Deutshe Bank Nat'l Tr. Co.*, 614 F.App'x 214, 215 (5th Cir. 2015) (per curiam) (citing *Eversley*, 843 F.2d at 174). "The court need only decide whether those undisputed facts are material and entitle the movant to judgment as a matter of law." *Id.* (citing *Eversley*, 843 F.2d at 174). Further, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphases in original).

## III.   DISCUSSION

Dechow argues that he is entitled to summary judgment for four reasons. (Dkt. No. 27 at 2–3). First, Fletcher did not exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (*Id.*). Second, Fletcher cannot show that Dechow used excessive force because Dechow did not maliciously and sadistically harm Fletcher. (*Id.*). Third, Fletcher is entitled to qualified immunity. (*Id.*). Finally, Dechow cannot recover compensatory damages because he does not allege a physical injury of more than *de minimis* value, which is required to meet the physical-injury requirement under the PLRA. (*Id.*).

The Court considers Dechow's first two arguments and concludes that while Fletcher did exhaust his administrative remedies under the PLRA, Dechow is entitled to

qualified immunity under the clearly-established prong.  Therefore, the Court does not reach Dechow's other arguments.

### A.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

Under the PLRA, a prisoner must first exhaust available administrative remedies before bringing a federal lawsuit to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); *see* 42 U.S.C. § 1997e(a).  To that end, prisons must have a formal grievance process, and inmates must comply with that process before filing a lawsuit.  *See Jones*, 549 U.S. at 202, 204, 218, 127 S.Ct. at 914, 922–23.

The TDCJ's grievance procedure has two steps.  First, a prisoner must file a "Step 1 grievance . . . within fifteen days of the complained-of incident."  *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004); Tex. Dep't of Crim. Just., Offender Orientation Handbook 74 (Feb. 2017 ed.) [hereinafter TDCJ Handbook], https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf.  The Step 1 grievance must contain clear and specific facts that articulate the problem and the action they are requesting prison leadership to take to resolve it.  *Johnson*, 385 F.3d at 515; TDCJ Handbook, *supra*, at 75; (Dkt. No. 27-1 at 2) (directing inmates to "state who, what, when, [and] where" in their Step 1 form); *see also Johnson*, 385 F.3d at 522 ("[T]he grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit . . . ").  The prisoner's facility is responsible for handling and responding to a prisoner's Step 1 grievance.  *Johnson*, 385 F.3d at 515.

If an inmate is "not satisfied with the Step 1 response, [they] may appeal the Step 1 decision by filing a Step 2" grievance, TDCJ Handbook, *supra*, at 74, which is "handled at the state level," *Johnson*, 385 F.3d at 515. The TDCJ Handbook does not specify what must be included in a Step 2 grievance, except that the prisoner must attach their original, answered Step 1 grievance to their Step 2 submission. TDCJ Handbook, *supra*, at 75; (Dkt. No. 27-1 at 4). That said, the TDCJ Handbook explains that the purpose of a Step 2 grievance is to appeal dissatisfaction with the response to the Step 1 grievance, TDCJ Handbook, *supra*, at 74, and the Step 2 form prompts inmates with the following: "I am dissatisfied with the response at Step 1 because . . . ," (Dkt. No. 27-1 at 4). A prisoner must "pursue a grievance through both steps for it to be considered exhausted." *Johnson*, 385 F.3d at 515.

Plaintiffs are not required to plead facts to show exhaustion in their complaints. *Jones*, 549 U.S. at 216, 127 S.Ct. at 921. Instead, failure to exhaust administrative remedies is an affirmative defense for which the defendant carries the burden of proof. *Id.* "At the summary-judgment stage, . . . defendants 'must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor.'" *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

In his Motion for Summary Judgment, Dechow argues that Fletcher did not exhaust his administrative remedies. (Dkt. No. 27 at 2, 6–11). Dechow contends that Fletcher's Step 2 grievance is inadequate for two reasons. (*Id.* at 10). First, Dechow contends that Fletcher impermissibly raised a new issue in his Step 2 appeal by

9

complaining about Warden Castleberry's inadequate response to his Step 1 grievance. (*Id.*). Second, Dechow asserts that Fletcher "completely neglect[ed] to pursue his use of force allegations against Dechow" by focusing on Warden Castleberry's handling of the grievance, thus failing to pursue his original Eighth Amendment claim through both grievance steps properly. (*Id.*).

Both of Dechow's arguments essentially make the same point: that complaining about Warden Castleberry's handling of the Step 1 response raises a "new" issue rather than continuing Fletcher's original Eighth Amendment claim. Therefore, resolving Dechow's objections turns on whether challenging the Step 1 response represents a "new" issue (which was not exhausted), or whether it is simply a continuation of Fletcher's original grievance (which would satisfy the PLRA's exhaustion requirement).

The Court holds that in challenging how the prison handled his Step 1 grievance, Fletcher continued to pursue his original Eighth Amendment use-of-force claim rather than replace it with a new issue. This conclusion aligns with Supreme Court precedent and the procedural instructions provided by TDCJ. The Supreme Court has stated that prisoners exhaust administrative remedies by complying with the rules set by the prison for its grievance process. *Jones*, 549 U.S. at 218, 127 S.Ct. at 922–23 ("[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but *by the prison grievance process itself*." (emphasis added) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 126 S.Ct. 2378, 2384, 165 L.Ed.2d 368 (2006)).

According to the TDCJ Handbook, the purpose of a Step 2 grievance is to express dissatisfaction with the prison's response to a Step 1 grievance. TDCJ Handbook, *supra*, at 74. Consistent with this purpose, the Step 2 grievance form prompts inmates to explain why they are dissatisfied with the response to their Step 1 grievance. (Dkt. No. 27-1 at 4). Furthermore, both the TDCJ Handbook and Step 2 form state that the original, answered Step 1 grievance will accompany the Step 2 grievance, (*id.*); TDCJ Handbook, *supra*, at 75, underscoring that the Step 2 form is intended to address the handling of the original grievance rather than to restate it.

Here, Fletcher's Step 2 submission complies with these instructions. In his Step 2 grievance, Fletcher expressed dissatisfaction with the warden's response to his Step 1 grievance, specifically noting the lack of clarity on whether an investigation into the alleged excessive force occurred. (Dkt. No. 27-1 at 4). In doing so, Fletcher explicitly referenced his underlying Eighth Amendment excessive-force claim. (*Id.*) (stating Fletcher is appealing the handling of the "violation of T.D.C.J.['s] use of force plan, 8th Constitutional Amendment Rights."). Contrary to Dechow's assertion, Fletcher's Step 2 grievance did not introduce a new or unrelated claim, nor did it alter the basis of his original complaint. (*Id.*). Instead, Fletcher used the Step 2 grievance to challenge the adequacy of the prison's response to his Step 1 grievance, precisely as the TDCJ procedure instructs.

The cases Dechow cites to argue that Fletcher introduced a new issue in his Step 2 grievance are distinguishable. In those cases, the plaintiffs omitted key details from their Step 1 grievances, depriving TDCJ of the "time and opportunity to address complaints

11

internally" before the Step 2 grievance was filed. *Johnson*, 385 F.3d at 516 (quoting *Porter v. Nussle*, 534 U.S. 516, 525, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002)); *see, e.g.*, *Bangmon v. Alexander*, No. 18-41043, 2021 WL 3477490, at *3 (5th Cir. Aug. 6, 2021) (per curiam) (holding plaintiff did not exhaust administrative remedies against four prison officials when he did not mention three in either grievance and referenced the fourth only in his Step 2 grievance, which was "inadequate to give TDCJ the time and opportunity to address his complaint"); *Whiting v. Lambert*, No. 2:16-CV-00261, 2020 WL 760409, at *8 (N.D. Tex. Jan. 23, 2020) (finding administrative remedies not exhausted because plaintiff did not file a Step 2 grievance and omitted key allegations in his Step 1 grievance such that it "insufficiently provided notice of a claim"), *report and recommendation adopted*, No. 2:16-CV-00261, 2020 WL 759420 (N.D. Tex. Feb. 14, 2020); *Bryant v. Strong*, No. 4:11-CV-01586, 2013 WL 504893, at *3 (S.D. Tex. Feb. 7, 2013) (finding plaintiff did not exhaust remedies when he identified defendants only as "female officers" in his Step 1 grievance and provided their names for the first time in Step 2).

Not so here. Fletcher clearly identified Dechow and the nature of his complaint in his Step 1 grievance. (Dkt. No. 27-1 at 2). His Step 2 grievance did not name any new officers allegedly involved in the incident, nor did it add new allegations against the officers originally identified. There is also no assertion that the prison required additional details provided only in a Step 2 grievance to investigate Fletcher's claims. On the contrary, Dechow's Motion concedes that TDCJ was able to "substantively respond to [Fletcher's Step 1] grievance" before Fletcher filed his Step 2 form. (Dkt. No. 27 at 4 n.3). Given that Fletcher's Step 1 grievance was adequately detailed, Dechow has provided no

authority explaining why Fletcher's Step 2 grievance needed to reiterate the factual allegations from Step 1, especially given TDCJ's instruction that the Step 1 grievance would be attached to the Step 2 submission.

Fletcher's Step 2 grievance comports with TDCJ policy because it appropriately expresses dissatisfaction with the Step 1 response and is limited to the original excessive-force claim. Accordingly, Dechow has not shown "beyond peradventure"—that is, conclusively—that Fletcher failed to exhaust his administrative remedies under the PLRA. *See Wilson*, 776 F.3d at 299.

### B.   EIGHTH AMENDMENT VIOLATION AND QUALIFIED IMMUNITY

Dechow next argues that he is entitled to summary judgment because Fletcher cannot overcome Dechow's entitlement to qualified immunity. (Dkt. No. 27 at 11–18). The Court agrees.

As a TDCJ employee, Dechow may assert the defense of qualified immunity when sued in his personal capacity for actions taken under color of state law. 42 U.S.C. § 1983; *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991). "Qualified immunity protects government officials from liability for damages when they violate the law" but could reasonably "have believed that they were acting lawfully." *Ramirez v. Killian*, 113 F.4th 415, 421 (5th Cir. 2024).

Despite the summary-judgment posture, "[o]nce a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available." *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). To overcome a qualified-immunity defense, a plaintiff must show "(1) that the official violated a statutory or constitutional

13

right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011). "At the summary-judgment stage a plaintiff does not satisfy his burden to overcome the defense of qualified immunity with conclusory allegations or unsubstantiated assertions of wrongdoing." *Burke v. Masters*, No. 4:23-CV-00361, 2024 WL 1703085, at *7 (first citing *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018); and then citing *Williams-Boldware v. Denton County*, 741 F.3d 635, 643–44 (5th Cir. 2014)). Specifically on the second prong, a plaintiff must generally identify "a case in which an officer acting under similar circumstances was held to have violated the [Constitution]," and explain "why the case clearly proscribed the conduct of that individual officer." *Cope v. Cogdill*, 3 F.4th 198, 205 (5th Cir. 2021) (alteration in original) (quoting *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020)).

"The court is mindful that the plaintiff represents himself" and "[c]ourts are required to give a *pro se* litigant's contentions a liberal construction." *Burke*, 2024 WL 1703085, at *8 (first citing *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam); and then citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam)). But even pro se litigants are "not excused from meeting [their] burden of proof by specifically referring to evidence in the summary judgment record and setting forth facts showing that there is a genuine issue of material fact remaining for trial." *Id.* (citing *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 (5th Cir. 2016)); *see EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require pro se parties

14

to fundamentally 'abide by the rules that govern the federal courts.' Pro se litigants must properly . . . present summary judgment evidence . . . ." (internal citations omitted) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F.App'x 419, 421 (5th Cir. 2013) (per curiam))).

Fletcher has not responded to Dechow's summary-judgment motion and has not carried his burden of rebutting Dechow's qualified-immunity defense by establishing a genuine fact issue about whether Dechow's allegedly wrongful conduct violated clearly established law. *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020). Even examining Fletcher's previous filings, he includes no citations to legal precedent or authority suggesting that Dechow's conduct was "clearly" unconstitutional, nor does he support his assertions of wrongdoing with any evidence beyond his own statements in his TDCJ grievances. (*See generally* Dkt. Nos. 1, 10). As a result, Fletcher has not carried his burden to rebut Dechow's qualified-immunity defense. *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam) ("It is the plaintiff's burden to find a case in his favor . . . ."); *Cass v. City of Abilene*, 814 F.3d 721, 733 (5th Cir. 2016) (per curiam) (granting qualified immunity even though the defendant cited no cases in his favor to the district court because plaintiffs bear the burden of showing specific law on point). That failure dooms Fletcher's case. *Vann*, 884 F.3d at 310.

As Fletcher has not met his burden on the second prong of the qualified-immunity standard, the Court need not address whether Dechow violated Fletcher's constitutional rights. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). Dechow is entitled to qualified immunity.

## IV.   CONCLUSION

For the foregoing reasons, Dechow's Motion for Summary Judgment, (Dkt. No. 27), is **GRANTED**, and Plaintiff Fletcher's Complaint, (Dkt. No. 1), is **DISMISSED WITH PREJUDICE**.  Fletcher's Motion for Appointment of Counsel, (Dkt. No. 30), is **DENIED as moot**.

It is SO ORDERED.

Signed on March 31, 2025.

                                                **DREW B. TIPTON**
                                         **UNITED STATES DISTRICT JUDGE**